# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JUN 13 2025 PM3:11
FILED-USDC-CT-HARTFORD

Zohra Salehi MD
_____,
          Plaintiff,
v.                                    Case No. _____
                                        (To be supplied by the Court)
Hartford Hospital et al.
_____,
          Defendants.

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1. Plaintiff resides at the following location:

   222 Main Street Suite # 237, Farmington, CT 06032

2. Defendant(s) reside(s) at the following location [Attach additional sheets if more space is required]: Hartford Hospital c/o CORPORATION SERVICE COMPANY

   Goodwin Square 225 Asylum Street 20th Floor

   Hartford, CT, 06103          (see attached for additional defendants)

3. This action is brought pursuant to [Check all spaces that apply to the type of claim(s) you wish to assert against the Defendant(s)]:

[X] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of race, color, religion, sex, or national origin. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e-5(f). Equitable and other relief is sought under 42 U.S.C. § 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

[ ] Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination based upon age. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1337, and/or 1343. Equitable and other relief is sought under 29 U.S.C. §§ 626(b) and (c) or §§ 633a(b) and (c).

   My Year of Birth is: _____.

## **Additional Defendants**:

2) HARTFORD HEALTHCARE CORPORATION

c/o CORPORATION SERVICE COMPANY

Goodwin Square 225 Asylum Street 20th Floor

Hartford, CT, 06103, United States

3) Jackson Healthcare, LLC

2655 Northwinds Parkway, Alpharetta, GA, 30009

4) LT MEDICAL, LLC

2655 Northwinds Parkway, Alpharetta, GA, 30009

☒ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq., for employment discrimination on the basis of a disability against an employer which constitutes a program or activity receiving Federal financial assistance. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1337 and/or 1343. Equitable and other relief is sought under 29 U.S.C. § 794a.

☒ Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq., for employment discrimination on the basis of a disability against a private employer. Jurisdiction is specifically conferred on this Court by 42 U.S.C.§ 2000e-5(f). See 42 U.S.C. § 12117(a). Equitable and other relief is sought pursuant to 42 U.S.C. § 2000e-5(g). Id.

4. The acts complained of in this suit concern [Check all spaces that are applicable to your claim(s)]:

(A) ☐ Failure to hire me. I was refused a job on the following date(s): ____

(B) ☒ Termination of my employment. I was terminated from my employment on the following date: 4/4/2022

(C) ☐ Failure to promote me. I was refused a promotion on the following date(s): ____

(D) ☒ Other acts as specified below: ____
Failure to Provide Reasonable Accommodation, Breach of the implied covenant of good faith and fair dealing, improper notice of termination without due cause, and Misrepresentation of Resignation

5.  The conduct of the Defendant(s) was discriminatory because it was based upon: race [X], color [ ], religion [ ], sex [X], age [ ], national origin [X] or disability [X]. [Please check all applicable bases for your claim of discrimination and explain further, if necessary]: _____

_____

6.  The facts surrounding my claim of employment discrimination are as follows [Attach additional sheets, if necessary]:
See Appendix A

_____

_____

_____

_____

_____

_____

_____

7.  The approximate number of persons who are employed by the Defendant employer I am suing is: 44,000   .

8.  The alleged discrimination occurred on or about the following date(s) or time period: See Appendix B   .

3

9. I filed charges with the:

   ☒ Equal Employment Opportunity Commission

   ☒ Connecticut Commission on Human Rights and Opportunities

10. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter **(copy attached)**, which I received on or about the following date: _3/15/2025_ .
**[NOTE:** If you filed charges with the EEOC or the CHRO, you **MUST** attach a copy of the Notice of Right to Sue letter for this Court to consider your claim(s). Failure to do so may result in delaying consideration of your claim(s).]

11. The EEOC or the CHRO determined that there was no probable cause to believe that discrimination occurred. My reasons for questioning that determination are as follows [Attach additional sheets, if necessary]: _See Appendix C_

_____

_____

_____

12. If relief is not granted, I will be irreparably denied rights secured under the law(s) referred to in Item Number 3, above.

13. WHEREFORE, Plaintiff(s) pray(s) that: The Court grant such relief as may be deemed appropriate, including **[NOTE:** While all of the forms of relief listed below may not be available in a particular action, you should place a check next to each form of relief you seek.):

   ☐ Injunctive orders (specify the type of injunctive relief sought): _____
   _Reinstatement of Clinical Privileges: Restore your professional standing. Remove record of resignation._ ;

   ☒ Backpay;

4

☒ Reinstatement to my former position;

☒ Monetary damages (specify the type(s) of monetary damages sought):
___ $ 1,000,000 _____ ;

☒ Other (specify the nature of any additional relief sought, not otherwise provided for on this form): Pre Judgement interest _____

☒ AND costs and attorneys' fees.

## JURY DEMAND

I hereby   DO ☒   DO NOT ☐   demand a trial by jury.

_____   _____ /s/ Zohra _____
Original signature of attorney (if any)   **Plaintiff's Original Signature**

| | Zohra Salehi MD |
Printed Name and address   Printed Name and address

_____   222 Main Street Suite # 237, Farmington, CT 06032

( )   (860) 470 - 6440
Attorney's telephone   Plaintiff's telephone

_____   _____
Email address if available   Email address if available

Dated: _____

5

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ___192 Waterville Rd.___ on ___6/13/25___.
           (location)                  (date)

Farmington, CT 06032    _____
                        **Plaintiff's Original Signature**

(Rev. 3/23/16)

# APPENDIX A

**Factual Allegations**

1. Defendant, Hartford Hospital, ("Hartford Hospital"), is one of the hospitals owned and operated by Hartford Healthcare Corporation, and is located at 80 Seymour Street, Hartford, CT 06106

2. Plaintiff, Zohra Salehi MD, ("Plaintiff"), is a physician who provided professional medical services at Hartford Hospital from approximately November 2019 to March 16, 2022.

3. Defendant, LT Medical, LLC ("LT"), with a principal place of business in Georgia, has a longstanding contractual relationship with Hartford Hospital. LT is a subsidiary of Jackson Healthcare, LLC, a staffing entity. Plaintiff signed a work agreement with LT in order to work at Hartford Hospital.

4. Defendant, Jackson Healthcare ("Jackson"), a healthcare staffing company, has a principal place of business in Georgia. At all times relevant to this Complaint, Jackson was responsible for overseeing the operations of its subsidiaries, including LT.

5. During the COVID-19 pandemic, Hartford Hospital heavily depended on contracted medical professionals, such as Plaintiff, to fill critical staffing shortages.

6. Plaintiff served as a frontline physician treating COVID-19 patients in dedicated units while living away from home, reflecting her commitment to patient care and public health during the pandemic.

7. Prior to her assignment at Hartford Hospital, Plaintiff and LT Medical LLC entered into a mutually agreed-upon contractual arrangement.

8. Although Plaintiff was formally classified as an independent contractor through LT Medical LLC, Hartford Hospital, exercised significant control over Plaintiff's daily work activities.

9. Hartford Hospital unilaterally assigned Plaintiff to specific hospital units and shifts, without allowing Plaintiff to choose her work areas or schedule.

10. Plaintiff worked consistently at Hartford Hospital for approximately three years and was fully integrated into the hospital's operational and clinical systems, akin to a regular employee.

11. Hartford Hospital determined Plaintiff's work schedule, including the specific days and hours she was required to work, with minimal input from Plaintiff or LT Medical LLC.

12. Plaintiff was required to follow Hartford Hospital's internal protocols, policies, and procedures with limited professional autonomy.

13. Plaintiff's work was subject to direct supervision by Hartford Hospital personnel, who provided instruction, oversight, and performance feedback related to patient care and administrative tasks.

14. Plaintiff utilized Hartford Hospital's equipment, resources, and medical facilities to carry out her duties, consistent with the practices of the hospital's directly employed staff.

15. Hartford Hospital applied its internal policies to Plaintiff, including its mandatory COVID-19 vaccination policy, without distinction based on Plaintiff's independent contractor status.

16. The level of control Hartford Hospital exercised over Plaintiff's work conditions, schedule, and job responsibilities demonstrates that Plaintiff functioned as an employee in practice.

17. Because Hartford Hospital treated Plaintiff as an employee in all material respects, it was subject to the requirements of the Americans with Disabilities Act (ADA) and the Rehabilitation Act regarding its conduct toward Plaintiff.

18. The failure to accommodate and the termination constitute unlawful disability discrimination in violation of the ADA and Rehabilitation Act.

19. The degree of control exercised by Hartford Hospital, Plaintiff's economic dependence on the work, and her integration into hospital operations are consistent with factors used in Connecticut case law to determine the existence of an employment relationship for purposes of wrongful discharge and federal employment protections.

20. Plaintiff served the Connecticut community faithfully as a medical professional and was economically dependent on her work with Hartford Hospital for her livelihood.

21. Plaintiff was assigned by Hartford Hospital to specific work shifts and departments, with limited ability to work for other facilities or set her own independent rates of compensation. Hartford Hospital was the primary source of Plaintiff's income during the relevant period, both before and during the COVID-19 pandemic, further evidencing Plaintiff's economic dependence on the Defendant.

22. Based on the totality of circumstances and the multifactor "economic realities" test outlined in *United States v. Silk*, *Nationwide Mutual Ins. Co. v. Darden*, and *Knight v. United Farm Workers of Am.*, Hartford Healthcare, Inc. exercised sufficient control over the Plaintiff's work and employment terms to be considered a joint employer for purposes of liability under the Americans with Disabilities Act and other applicable laws.

**Discriminatory Treatment and Disparate Impact**

23. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-22 as fully set forth herein.

24. Plaintiff's former boss' inconsistent narrative at CHRO hearing supports an inference of pretext. He never raised any performance criticisms directly with Plaintiff at the time the alleged issues occurred but instead waited until the CHRO hearing to bring up these complaints, indicating that the criticisms were not genuine or important when they supposedly arose.

25. Plaintiff's former boss claimed that Franca, the scheduler, was solely responsible for assigning shifts and that he was unaware of scheduling decisions. However, as Franca reports to Plaintiff's

boss, he shared oversight and responsibility for his scheduling staff and process, undermining his claimed lack of knowledge or involvement.

26. Plaintiff's former boss sent a group email criticizing Plaintiff for allegedly failing to enter Electronic Medical Records (EMR) notes by 8:00 a.m. — when the next doctor begins their shift the following morning — asserting this was a safety measure. Per hospital policy, 24 hours is provided to enter note and Plaintiff planned on meeting this measure, but Plaintiff's former boss wanted it completed 9 hours earlier than the cutoff.

27. If Plaintiff's former boss objected to the longstanding hospital EMR note entry policy, it was the hospital's responsibility to modify the policy and notify all doctors of the change accordingly. Plaintiff acted in good faith and fully complied with the established hospital procedures.

28. Plaintiff was not given proper notice of any change or new rule requiring documentation by 8:00 a.m., which violates federal procedural due process protections requiring fair notice of work rule changes or expectations.

29. These inconsistencies and lack of proper notice further support the conclusion that the stated reasons for Plaintiff's adverse treatment are pretextual, masking unlawful discrimination or retaliation.

**Pretextual Reasons for Termination**

30. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-29 as fully set forth herein.

31. Lack of Prior Notice: Plaintiff was never informed of any performance deficiencies or concerns at the time they allegedly occurred. The first performance criticisms appeared only during the CHRO hearing, indicating the reasons for her adverse treatment were pretextual to conceal discrimination.

32. Inconsistent Treatment and Scheduling Oversight: Plaintiff's former boss asserted that Franca, the scheduler, solely managed scheduling and that he was unaware of shift assignments affecting Plaintiff. However, Franca reported directly to Defendant, meaning he shared oversight and responsibility for scheduling decisions, undermining his claimed ignorance.

33. Incorrect Criticism of EMR Note Timing: Defendant criticized Plaintiff for not entering EMR patient notes by 8:00 a.m., when the next doctor's shift begins, citing safety concerns. However, hospital policy allows physicians up to twenty-four (24) hours to complete notes. Plaintiff complied with the hospital's written policy in good faith. If Plaintiff's boss disagreed with this timing, the hospital must formally revise the policy and provide clear notice to all physicians. Plaintiff was not given any such notice, violating due process principles.

34. Inconsistent Narrative and Timing of Complaints: Defendant's failure to communicate criticisms contemporaneously, waiting until CHRO proceedings to raise them, supports an inference of pretext. This inconsistent narrative further demonstrates that the reasons provided for adverse actions lack credibility and mask unlawful discrimination.

**Statistical Disparities and Discriminatory Patterns**

35. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-34 as fully set forth herein.

36. Disproportionate Representation of Foreign H-1B Physicians: Hartford Hospital employs a large number of foreign H-1B doctors, predominantly from India and Pakistan—citizens of Southeast Asia temporarily residing in the U.S.

37. Retention and Termination Disparities: These foreign H-1B doctors are rarely terminated or voluntarily leave; they are mostly retained compared to American citizen doctors. By contrast, most doctors terminated or who voluntarily left during the relevant period were American citizens, including Plaintiff This disparity suggests discriminatory preferences or systemic bias based on national origin.

38. Federal Jurisdiction: Given that Plaintiff claims involve federal anti-discrimination statutes such as Title VII of the Civil Rights Act and the Rehabilitation Act, the federal courts have jurisdiction to hear her case.

39. Plaintiff respectfully requests the federal court to:

40. Overturn the CHRO's dismissal and permit her discrimination claims to proceed.

41. Recognize that the proffered reasons for her termination and treatment are pretextual.

42. Acknowledge the statistical disparities and patterns indicating discriminatory treatment based on national origin and/or country of citizenship.

43. Grant appropriate remedies, including back pay, reinstatement, compensatory damages, and any other relief the court deems just and proper.

**Failure to Provide Reasonable Accommodation Under the ADA**

44. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-43 as fully set forth herein.

45. Hartford Hospital directly applied its mandatory COVID-19 booster policy to Plaintiff. Plaintiff was fully vaccinated against COVID-19, having received the Pfizer-BioNTech vaccine series (doses 1 and 2) in November and December 2021. The mandatory booster vaccine was introduced as an additional requirement, communicated via an email from Hartford Hospital's medical staff office directed to all "practitioners." Plaintiff did not believe this mandate applied to her because her official title was "physician," "doctor," or "medical provider." Additionally, LT Medical LLC neither notified Plaintiff of the booster requirement nor included it in Plaintiff's contract agreement.

46. The mandatory COVID-19 booster policy, with a compliance deadline of March 31, 2022, was established by Hartford Hospital. Due to prior adverse reactions to COVID-19 vaccination, Plaintiff sought a medical exemption from this requirement, disclosing her medical condition at the time. On March 21, 2022, Plaintiff informed Hartford Hospital's medical staff office of her

concerns, expressing a preference for a non-mRNA booster vaccine due to previous adverse effects, which she believed might affect her fertility. Lacking sufficient data on the long-term safety and effects of the vaccine, Plaintiff reasonably chose to prioritize her health and allow her body time to recover before receiving another vaccine dose.

47. Despite pressure and persistent demands from Hartford Hospital via emails and phone calls urging Plaintiff to receive the booster or obtain a medical exemption, Plaintiff encountered significant difficulty securing a healthcare provider to complete the exemption form. Due to these challenges, Plaintiff was unable to comply with the booster mandate by the deadline. Plaintiff communicated these difficulties to Hartford Hospital and agreed to have her clinical privileges suspended temporarily, hoping for their eventual restoration.

48. Despite Plaintiff's timely request for a medical exemption, Hartford Hospital permanently revoked Plaintiff's clinical privileges on April 4, 2022—before Plaintiff had the opportunity to complete the exemption process. The Connecticut Commission on Human Rights and Opportunities (CHRO) later concluded that Plaintiff's termination was related to the COVID-19 vaccine mandate. Hartford Hospital refused to reinstate Plaintiff's privileges.

49. Plaintiff contends that Hartford Hospital failed to provide reasonable accommodation for Plaintiff's disability—namely, the medical condition causing her adverse reaction—as required by the Rehabilitation Act, which is consistent with the standards set forth by the Americans with Disabilities Act (ADA). Plaintiff's request for a medical exemption constituted a reasonable accommodation, yet Hartford Hospital failed to engage in the required interactive process to explore temporary or alternative accommodations that would permit Plaintiff to seek medical evaluation and care.

50. Furthermore, Hartford Hospital's termination of Plaintiff's privileges based on her need for a medical accommodation constitutes discrimination on the basis of disability.

51. Plaintiff's disability involved a medical condition that caused adverse reactions to a prior COVID-19 vaccination, rendering additional mRNA booster doses medically inadvisable and necessitating a medical exemption as a reasonable accommodation. This condition substantially limits Plaintiff's ability to comply with Hartford Hospital's mandatory booster policy without risking further adverse health consequences.

52. Plaintiff faced significant challenges securing a timely medical evaluation, as her primary care provider's earliest appointment was months away due to pandemic-related scheduling delays. Plaintiff promptly notified Hartford Hospital of these delays and requested a brief, reasonable extension of the March 31 deadline to allow for completion of the medical exemption process.

53. Hartford Hospital denied Plaintiff's request, failed to engage in any meaningful interactive process, and did not offer alternative accommodations or extensions despite its legal obligation to do so under the ADA. Instead, on April 4, 2022, Hartford Hospital revoked Plaintiff's clinical privileges and terminated her employment for non-compliance with the booster mandate before Plaintiff had the opportunity to complete the exemption procedure.

54. Plaintiff asserts that there would have been no undue hardship if Hartford Hospital provided the reasonable accomodation.

**COUNT I – NATIONAL ORIGIN DISCRIMINATION**

(Violation of Title VII of the Civil Rights Act of 1964 – 42 U.S.C. § 2000e et seq.)

55. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-54 as fully set forth herein. Although Plaintiff shared a similar ethnic background with many H-1B visa-holding physicians retained by Defendant, she was a naturalized American citizen and was not afforded the same preferential treatment. Upon information and belief, Hartford Hospital favored foreign nationals holding temporary visas over U.S. citizens, including foreign-born citizens, due to economic incentives and control dynamics. This constituted disparate treatment based on national origin in violation of Title VII.

**COUNT II – FAILURE TO ACCOMMODATE AND DISABILITY DISCRIMINATION**

(Violation of the Americans with Disabilities Act – 42 U.S.C. § 12101 et seq.)

56. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-54 as fully set forth herein. Despite Plaintiff's suspected disability and her timely request for a reasonable accommodation—a medical exemption from Defendant's mandatory COVID-19 booster vaccine policy—Defendant failed to engage in the required interactive process. Plaintiff made a good faith effort to obtain medical documentation supporting her accommodation request but was unable to secure a timely appointment due to circumstances beyond her control, including pandemic-related delays. Defendant refused to provide temporary accommodations or extensions while Plaintiff worked to complete the exemption process. Instead, Defendant unilaterally revoked Plaintiff's clinical privileges and terminated her privileges before the accommodation request could be fully considered. This refusal to accommodate Plaintiff's disability, despite her demonstrated efforts and the absence of undue hardship, constitutes a violation of the Americans with Disabilities Act and the Rehabilitation Act.

**COUNT III – CITIZENSHIP-BASED DISCRIMINATION / DISPARATE TREATMENT**

57. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1-54 as fully set forth herein. Plaintiff, a foreign-born U.S. citizen, was subjected to adverse employment actions by Defendant in favor of non-citizen foreign nationals holding temporary visas, such as H-1B visa holders. This preferential treatment of non-citizen employees over a citizen employee constitutes disparate treatment based on citizenship status, which is prohibited under the Immigration Reform and Control Act (IRCA). Moreover, because citizenship status often overlaps with national origin, this conduct also amounts to national origin discrimination under Title VII. Defendant's actions reflect an unlawful bias that favors visa-dependent workers, resulting in the unjust termination and discriminatory treatment of Plaintiff. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including lost wages and other damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Compensatory Damages in the amount of One Million Dollars ($1,000,000) for the damages resulting from Defendant's unlawful discrimination;

2. Punitive Damages in an amount sufficient to punish Defendant for its willful, malicious, and reckless conduct, and to deter similar conduct in the future;

3. Back Pay and pre judgment interest for all lost wages, benefits, and other economic losses incurred as a result of Defendant's unlawful discrimination, wrongful termination, and disparate treatment.

4. Reinstatement to Plaintiff's former position or, alternatively, front pay if reinstatement is not feasible;

5. Reasonable Attorney's Fees and costs pursuant to applicable federal and state anti-discrimination laws;

6. Trial by Jury on all issues so triable; and

7. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Zohra Salehi MD

6/13/25

# APPENDIX B

1. Plaintiff experienced discriminatory treatment during the period from July 2021 through April 2022, as detailed below:

2. July 2021: Plaintiff was subjected to unequal workload assignments and regularly assigned to higher-risk units without adequate training or orientation, unlike her colleagues.

3. February 2022: Plaintiff formally objected to being over-tasked, consistently denied lunch breaks, and being required to cover dual assignments without prior notice or her agreement.

4. March 2022: After reporting these concerns to the Defendant's management level employee, Plaintiff was subsequently removed from the work schedule, constituting retaliatory action.

5. April 4, 2022: Hartford Hospital revoked Plaintiff's clinical privileges, effectively terminating her employment.

6. April 24, 2022: Plaintiff received a letter misrepresenting the circumstances of her departure as a resignation, despite never submitting a resignation letter, further evidencing intentional misrepresentation and pretext in the termination process.

# APPENDIX C

**Plaintiff's Objection to the Determination of No Probable Cause**

Plaintiff respectfully disagrees with the determination that there was no probable cause to believe discrimination occurred.

Hartford Hospital exercised significant control over Plaintiff's work, effectively treating her as an employee despite formally classifying her as an independent contractor. As such, Hartford Hospital's actions—including failure to provide reasonable accommodation, misclassification, and wrongful termination—should be subject to the protections afforded under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Although Plaintiff was fully vaccinated against COVID-19, she experienced documented adverse reactions, rendering a booster medically inadvisable. Plaintiff requested a medical exemption prior to the March 31, 2022 deadline; however, Hartford Hospital failed to engage in an interactive process to accommodate her condition.

Moreover, Plaintiff was uncertain why she was required to take the booster, as she had recently contracted COVID-19 while working in the emergency room and was within the 90-day window for natural immunity under CDC guidelines. Instead of providing accommodation, Hartford Hospital prematurely revoked Plaintiff's clinical privileges on April 4, 2022, effectively terminating her employment. The Connecticut Commission on Human Rights and Opportunities (CHRO) later determined that Plaintiff's termination was directly tied to the vaccine mandate, reinforcing that the dismissal constituted disability-related discrimination.

Further, Hartford Hospital's exemption process imposed disparate treatment by setting stricter requirements for medical exemptions compared to religious exemptions. Religious exemptions required minimal documentation, while medical exemptions demanded external physician verification, which was especially burdensome given pandemic-related healthcare access restrictions.

Additionally, Plaintiff's termination was part of a broader pattern of retaliatory actions following her complaints about excessive workload and discriminatory treatment. After Plaintiff formally objected to mistreatment in February and March 2022, she experienced removal from the schedule, revocation of privileges, and misrepresentation of her resignation.

These circumstances warrant reconsideration of the determination and support the conclusion that Plaintiff's claims should proceed.