**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTIVUT**

| | | |
|---|---|---|
| ZOHRA SALEHI, MD,<br>*Plaintiff*,<br><br>v.<br><br>HARTFORD HOSPITAL, LT MEDICAL, LLC; JACKSON HEALTHCARE, LLC; HARTFORD HEALTHCARE CORPORATION<br>*Defendants*. | ) | 3:25-CV-00959 (SVN)<br><br><br><br><br><br>September 24, 2026 |

**<u>RULING ON MOTION TO DISMISS AND MOTION TO STRIKE</u>**

Sarala V. Nagala, United States District Judge.

In this employment discrimination action, Plaintiff Zohra Salehi has sued Defendants Hartford Hospital, Hartford Healthcare Corporation, LT Medical, LLC, and Jackson Healthcare, LLC. This ruling addresses two motions: (1) the motion to dismiss Count Six of Plaintiff's amended complaint, filed by Defendants LT Medical and Jackson Healthcare, ECF No. 57; and (2) Plaintiff's motion to strike affirmative defenses asserted by Defendants Hartford Hospital and Hartford Healthcare Corporation (the "Hartford Defendants"), ECF No. 75. For the reasons described below, the motion to dismiss is GRANTED, and the motion to strike is DENIED.

## I. FACTUAL BACKGROUND

The relevant facts are taken from the Plaintiff's amended complaint, which she filed *pro se*.[1] Am. Compl., ECF No. 15. The facts are accepted as true for the purpose of assessing the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[1] Counsel appeared for Plaintiff approximately eleven months after the case was filed, after the pending motions were fully briefed.

Plaintiff is a physician who signed a work agreement with a Defendant LT Medical, LLC ("LT"), a staffing company. ECF No. 15 ¶ 10. Through this staffing agreement, Plaintiff worked at Hartford Hospital from November 2019 until April 2022. *Id.* ¶ 10. Plaintiff was integrated into the hospital's operational and clinical systems; she was required to follow Hartford Hospital's policies and procedures; she was supervised by Hartford Hospital medical staff; she worked a schedule arranged by the hospitals shift scheduler; and she utilized Hartford Hospital's equipment, resources, and facility to carry out her duties. *Id.* ¶¶ 20–23. Plaintiff's work at Hartford Hospital was the primary source of her income both before and during the COVID-19 pandemic. *Id.* ¶ 31.

Plaintiff alleges that Hartford Hospital employs a substantial number of foreign physicians working in the United States under H-1B visas. *Id.* ¶ 42. The H1-B physicians that work at Hartford Hospital are predominantly from India and Pakistan. *Id.* ¶ 42. Plaintiff is not of Indian or Pakistani descent. *Id.* ¶¶ 52, 54.

Plaintiff worked at the hospital between 2019 and 2021 "without issue." *Id.* ¶ 56. Then, in 2022, Plaintiff began to come into conflict with one of her supervisors, Dr. Gagan Singh, who was an H-1B physician. *Id.* ¶¶ 56–57. Under Dr. Singh, Plaintiff "was no longer offered shift assignments despite her continued interest and availability," which coincided with a "departmental trend favoring physicians of Indian and Pakistani origin, to the detriment of similarly qualified non-Indian/Pakistani doctors," like Plaintiff. *Id.* ¶ 57.

In around February of 2022, while Plaintiff was attending to an oncology patient, she was directed to respond to two emergency room admissions on a "short call" assignment," which Plaintiff describes as "secondary coverage duties that typically require a hospitalist to admit new patients, respond to emergencies, or cover clinical duties for other provided—in addition to their scheduled patient load." *Id.* ¶¶ 58–59. Plaintiff initially refused these short call assignments

because she did not meet the criteria for being assigned short calls, based on the number of days she had worked that week. *Id.* ¶ 60. Plaintiff later relented and completed the assignments after Dr. Singh called LT, the staffing company that employed her, and LT in turn "urged that she complete the short call assignment." *Id.* ¶¶ 58–59, 62. Plaintiff alleges that at least five doctors who were eligible for the short call role were skipped over that week, and a majority of them were of Indian/Pakistani nationality. *Id.* ¶ 60.

Separately, two H1-B visa holders of Indian origin were voted into physician leadership roles to review and informally audit the clinical documentation and notes of all other physicians. *Id.* ¶¶ 67–68. On at least one occasion, one of these doctors, Dr. Khepal, monitored Plaintiff's patient notes, and noted alleged deficiencies to her supervisors. *Id.* ¶ 72. Dr. Khepal also reported the absence of a patient note to Dr. Singh, despite Plaintiff's argument that, under the hospital's policy, she had more time to complete the note. *Id.* She alleges another colleague of Indian nationality who was an H-1B visa holder regularly failed to enter patient notes on time, but it is "unclear whether such doctor was ever formally counseled or disciplined for these delays." *Id.* ¶ 77. Plaintiff was removed from the work schedule after March 16, 2022, while H-1B employee doctors, primarily of Indian and Pakistani national origin, were retained and continued to receive shift assignments. *Id.* ¶ 55.

Plaintiff contends that these issues about her performance only "served as a pretext for unlawful discrimination based on her national origin." *Id.* ¶ 78. Individuals of Indian or Pakistani origin, Plaintiff contends, were not subjected to such scrutiny or adverse treatment for comparable or less serious conduct. *Id.* Plaintiff further alleges that the "[t]he hospital used its H-1B sponsorship relationships in a way that created a discriminatory environment, disproportionately

favoring Indian and Pakistani H-1 B doctors over similarly situated non-H-1B, American doctors—in hiring, retention, shift assignment, and termination decisions." *Id.* ¶ 81.

In March of 2022, Plaintiff failed to get a COVID-19 booster shot. *Id.* ¶ 86. Plaintiff was repeatedly notified by Hartford Hospital staff that not getting the booster shot could cause her to lose her hospital position. *Id.* ¶¶ 86–87, 91. Plaintiff had medical symptoms which she believed were linked to either a past COVID-19 vaccination or past COVID-19 infection, so she chose not to heed these warnings from the hospital, and instead "sought to explore alternative compliance mechanisms." *Id.* ¶ 89. Hospital staff informed Plaintiff that if she wished to receive an exemption from the vaccination requirement, she would need to submit a medical exemption form by March 31, 2026. *Id.* ¶¶ 91, 93. In an email attached to Plaintiff's complaint, she reported that if she was required to get the booster shot by March 31, she would "agree to losing [her] privileges." ECF No. 15-1 at 6. On April 13, 2022, Plaintiff emailed the Medical Staff Office that she was not able to get an appointment with a doctor before the deadline. ECF No. 15 ¶ 94. Plaintiff contends that "[t]his April 13 communication constituted constructive notice to Defendant that Plaintiff was seeking an accommodation and unable to comply with the exemption requirement due to medical access barriers beyond her control." *Id.* ¶ 95.

On April 14, 2022, the Medical Staff Office of Hartford Hospital told Plaintiff that her privileges had been administratively relinquished on April 4, 2022, and that reinstatement would require either a vaccination record or a completed exemption form. *Id.* ¶ 97. Plaintiff alleges that these actions by Hartford Hospital resulted in it denying her reasonable accommodation for a disability, in violation of the Americans with Disabilities Act. *Id.* ¶¶ 98–104.

On April 14, 2022, the Medical Staff Office emailed Plaintiff, alleging that she had resigned and would soon be provided with an official resignation letter. *Id.* ¶ 105. Plaintiff

responded to state that she did not resign and did not plan on doing so. *Id.* ¶ 106. On April 26, 2022, Plaintiff received a letter that purported to accept her resignation, though she insists that she never resigned. *Id.* ¶ 107. The hospital directed her to return her ID badge, stopped scheduling her for shifts, and revoked her access to the hospital system. *Id.* ¶ 108. Plaintiff contends these actions constituted a *de facto* termination of her employment. *Id.* ¶¶ 108–09. Plaintiff sought employment at other hospitals owned and operated by Hartford Healthcare Corporation, but was unable to obtain employment at any of them. *Id.* ¶ 113.

On the basis of these allegations, Plaintiff alleges six counts against Harford Hospital and Harford HealthCare Corporation (together, "Hartford Defendants"): disparate treatment discrimination based on her national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* (Count One); disparate impact discrimination based on her national origin, in violation of Title VII (Count Two); wrongful termination based on a perceived disability, in violation of the Americans with Disabilities Act ("ADA), 42 U.S.C. § 12112(a) *et seq.* (Count Three); ADA retaliation (Count Four); breach of the covenant of good faith and fair dealing (Count Five); and fraudulent misrepresentation (Count Seven). In addition, Plaintiff alleges in Count Six that Defendants LT and Jackson Medical ("Jackson") breached the covenant of good faith and fair dealing. *Id.* ¶¶ 180–184.

## II. LT AND JACKSON'S MOTION TO DISMISS

For the reasons discussed below, the Court grants the motion to dismiss Count Six filed by LT and Jackson.

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not

required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

B. <u>Objection by Hartford Defendants</u>

First, the Court concludes that it will not consider the opposition to the motion to dismiss filed by Hartford Healthcare Corporation and Hartford Hospital.

By way of procedural history, after LT and Jackson filed their motion to dismiss, the Hartford Defendants sought an extension of time in which to file an opposition. *See* Mot. for Ext of Time, ECF No. 66. The Court granted that motion, but required the Hartford Defendants to

include citations to legal authority permitting them to oppose their co-Defendants' motion to dismiss. *See* Order, ECF No. 67 ("As part of their response, these Defendants shall include citation to any legal authority that permits other Defendants to respond to co-Defendants' motions to dismiss a complaint."). The first opposition the Hartford Defendants filed failed to include any such legal authority. *See* Order, ECF No. 72. The Court therefore rejected the initial opposition brief, but afforded the Hartford Defendants additional time to file a renewed opposition, containing such authority. *See id*. Hartford Health Corporation and Hartford Hospital then renewed their objection, contending that they are entitled to object because the Federal Rules of Civil Procedure anticipate that co-defendants "may have conflicting interests and provide mechanisms to address that adversity." *See* Second Opp. Br., ECF No. 79 at 5. LT and Jackson oppose consideration of the Hartford Defendants' opposition to their motion to dismiss. Reply, ECF No. 80.

It is inappropriate for the Court to consider the Hartford Defendants' opposition. As an initial matter, the Hartford Defendants blatantly ignored the Court's first order to include any legal authority supporting their ability to oppose the motion to dismiss. *See* ECF Nos. 67 & 71. This failure to comply with the Court's order would be reason enough to strike both the original opposition—which the Court has already done—and the renewed opposition.

Even considering the merits of the renewed opposition, however, the Court will not consider the Hartford Defendants' positions in deciding their co-Defendants' motion to dismiss. While it is true that the Federal Rules of Civil Procedure contemplate adversity among named defendants in a case, the procedural mechanisms the Hartford Defendants cite as permitting them to oppose the motion to dismiss are inapposite. First, Federal Rule of Civil Procedure 24 permits intervention in a suit by a party who was not originally named, if the existing parties cannot adequately represent the movant's interest in the property or transaction that is the subject of the

action. By its plain terms, then, Rule 24 does not address the situation where *named* Defendants seek to oppose the dismissal of *other named* Defendants. Second, Federal Rule of Civil Procedure 13(g) allows for a party to state a crossclaim against a coparty under certain circumstances; but the Hartford Defendants have failed to avail themselves of this option during the fifteen months this litigation has been pending. Accordingly, it appears disingenuous to claim that Rule 13(g) should be extended to allow the Hartford Defendants to oppose dismissal of LT and Jackson. And to the extent LT and Jackson are dismissed from the suit but the Hartford Defendants wish to litigate claims against them, the Hartford Defendants retain the option to seek leave to assert a third-party complaint against these entities under Federal Rule of Civil Procedure 14. Finally, if LT and Jackson are dismissed but the Hartford Defendants contend they are indispensable parties under Federal Rule of Civil Procedure 19, the Hartford Defendants are free to move to have them joined, if they believe the applicable legal standard is met. That such a motion would require investment of additional resources does not mean the Hartford Defendants can short-circuit the procedures provided in the Federal Rules.

The Hartford Defendants fail to point to a single instance in which *any* court has countenanced what they seek to do here, and the authorities to which they cite are either irrelevant or remain available as procedural mechanisms for them to preserve their rights vis-à-vis LT and Jackson, even if LT and Jackson are dismissed from Plaintiff's amended complaint. In short, the Hartford Defendants cannot circumvent the proper procedural mechanisms to assert arguments that LT and Jackson are liable to Plaintiff (or to the Hartford Defendants). Accordingly, the Court disregards the opposition to the motion to dismiss filed by the Hartford Defendants, and proceeds to considering whether LT and Jackson are properly dismissed from the action on the basis of the briefing submitted by LT and Jackson and Plaintiff only.

C. Jackson

First, the Court dismisses Count Six with respect to Jackson.

As described above, Plaintiff alleges that she entered into an agreement with LT, a staffing company. LT and Jackson have provided a copy of the Services Agreement with their motion to dismiss, which the Court can appropriately consider because it is integral to Plaintiff's complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); ECF No. 15 ¶ 182(6) (alleging unjust enforcement of a restrictive covenant in the Services Agreement). The Services Agreement is between Plaintiff and LT; Jackson is not a party to the agreement. *See* Servs. Agr., ECF No. 58-1 at 1 ("This agreement for services . . . is between ZOHRA SALEHI, MD . . . and LT Medical, LLC.").

As Jackson correctly notes, a claim for breach of the covenant of good faith and fair dealing requires a showing that the parties entered into a contract, as the covenant is an implied duty "requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Tucker v. Am. Int'l Grp., Inc.*, No. 3:09-CV-1499 (CSH), 2015 WL 403195, at *19 (D. Conn. Jan. 28, 2015) (quoting *Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth.*, 281 Conn. 227, 240 (2007)). To state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege that: "(1) two parties entered into a contract from which the plaintiff reasonably expected a benefit, (2) the defendant's actions denied or obstructed the plaintiff's expected benefit of the bargain, and (3) the injurious actions were the product of the defendant's bad faith." *Id.* (quoting *Royal Indem. Co. v. King*, 532 F. Supp. 3d 404, 414 (D. Conn. 2008)). "If there is no contract, there can be no implied covenant." *Wilton Meadows Ltd. P'ship v. Lynch*, No. FST CV 24-6070838-S, 2025 WL 2048591, at *3 (Conn. Super. Ct. July 18, 2025).

Given that Jackson was not a party to the Services Agreement, it cannot have breached the implied covenant of good faith and fair dealing implicit within that contract. Plaintiff's only

argument in response is that discovery may reveal a basis for Jackson's liability for breach of the covenant. But the hope of eventually uncovering some connection between Jackson and the contract at issue is not sufficient to make this claim plausible. Accordingly, Count Six must be dismissed insofar as it is alleged against Jackson.

D. LT

The Court also dismisses Count Six with respect to Defendant LT.

Plaintiff accuses LT of six separate failings under her claim for breach of the implied covenant of good faith and fair dealing: (1) failing to advocate for Plaintiff during the ADA interactive accommodation process, (2) failing to protect Plaintiff from discriminatory/retaliatory conduct by the hospital, (3) acting arbitrarily and in bad faith toward Plaintiff's continued employment interests; (4) failing to clarify the specific reason Hartford Hospital no longer wanted to offer Plaintiff continued work; (5) failing to inform Plaintiff that there was no future work, and (6) unjust enforcement of a restrictive covenant. ECF No. 15 ¶ 182.

"[B]ecause the covenant of good faith and fair dealing only 'requir[es] that neither party [to a contract] do anything that will injure the right of the other to receive the benefits of the agreement,' it is not implicated by conduct that does not impair contractual rights." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013) (quoting *Home Ins. Co. v. Aetna Life & Cas. Co.*, 235 Conn. 185, 200 (1995)). Thus, "[u]nless there is an alleged failure to provide a contractually mandated benefit, there is no bad faith claim." *Tucker*, 2015 WL 403195, at *19; *see also Capstone*, 308 Conn. at 797–798 (concluding that "bad faith is not actionable apart from a wrongful denial of a benefit" under the insurance policy at issue and stating that "[a] review of

our cases involving the duty of good faith and fair dealing reveals that violations of express duties are necessary to maintain a bad faith cause of action.").[2]

The Services Agreement between Plaintiff and LT sets forth the relevant duties and obligations of the parties. In pertinent part, LT promised to offer Plaintiff's medical services to clients; provide appropriate payment to Plaintiff for the medical services she provided to clients; arrange for medical malpractice insurance; and assist Plaintiff in applying for licensure and medical staff privileges. ECF No. 58-1 at 1. Plaintiff, in turn, promised to notify LT of the days she was available and to notify it "immediately if [she was] unable to perform [her] agreed assignment for any reason," provide all documentation LT required, obtain and maintain privileges at relevant facilities, provide professional medical services "exercising medical judgment as [she] deem[s] appropriate in accordance with applicable standards of care," comply with federal, state, and local law, complete all patient medical records to the satisfaction of the client, complete necessary paperwork to allow for patient billing, and observe all applicable quality assurance and risk management programs required by the client. *Id.* at 1–2.

Based on this recitation of the obligations undertaken by the parties in the Services Agreement, it is clear that the first two and the fourth and fifth grounds Plaintiff claims as breaches of the implied covenant of good faith and fair dealing must fail. LT undertook no duty in the Services Agreement to advocate for Plaintiff during the ADA interactive accommodation process; to protect Plaintiff from discriminatory or retaliatory conduct by the hospital; to clarify the specific reason Hartford Hospital no longer wanted to offer Plaintiff continued work; or to inform Plaintiff that there was no future work. Accordingly, without any contractual provisions that required LT

[2] Plaintiff cites to *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271 (3d Cir. 2004), for the proposition that a party can breach the implied covenant of good faith and fair dealing without violating an express term of the contract. *See* Pl.'s Opp. Br., ECF No. 68 at 6. *Fields* cites to New Jersey law for that proposition, however, and there is no basis for applying New Jersey law here. The Connecticut Supreme Court has expressly held the opposite in *Capstone*.

to do these things, LT could not have breached such provisions, and there is no attendant breach of the covenant of good faith and fair dealing. Plaintiff has likewise failed to show that these alleged breaches deprived her of the benefit of her bargain with LT. *See Tucker*, 2015 WL 403195, at *19.[3]

In her third allegation of breach of the implied covenant of good faith and fair dealing, Plaintiff claims that LT acted "arbitrarily and in bad faith toward Plaintiff's continued employment interests." ECF No. 15 ¶ 182(3). In Connecticut, "[b]ad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." *Tucker*, 2015 WL 403195, at *19 (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004)). Plaintiff has failed to allege any facts plausibly suggesting that LT acted with a dishonest purpose or interested or sinister motive. And her allegation that LT acted "arbitrarily and in bad faith toward Plaintiff's continued employment interests" is merely conclusory, which does not suffice to defeat a motion to dismiss. *See Five Star Cars LLC v. Graphic Arts Mut. Ins. Co.*, No. 3:22-CV-915 (MPS), 2024 WL 83424, at *10 (D. Conn. Jan. 8, 2024) (dismissing breach of implied covenant of good faith and fair dealing claim where the plaintiff's allegations of bad faith were merely conclusory and unsupported by facts). Indeed, Plaintiff's attachments to her amended complaint indicate that LT "looked into everything surrounding" Plaintiff's contract with Hartford Hospital, concluded that "[b]oth Hartford [Hospital] and [Plaintiff] ha[d] honored the contract terms of [her] assignment," and that, under

[3] Additionally, any client could request that Plaintiff be removed from the assignment "for any reason including but not limited to concerns regarding professional competence and professional integrity." ECF No. 58-1 at 3. Given that a client could request removal of Plaintiff for any reason, she would have no reasonable expectation of continued work, and thus LT's alleged failure to assist with her separation from Hartford Hospital is of no merit.

the Services Agreement, "[i]t [was] within your rights and the client[']s to not extent a contract if either party feels that it is not a good fit." ECF No. 15-1 at 4. Thus, Plaintiff's own allegations contradict any inference that LT acted with dishonest purpose or sinister motive: instead, it investigated Plaintiff's allegations and reasonably construed the contractual language as allowing Hartford Hospital to request that Plaintiff no longer be assigned to work there. Plaintiff's contention that Hartford Hospital used "vague reasoning" to terminate her and that LT's failure to investigate further or advocate or Plaintiff resulted in LT "effectively acquiesce[ing] in, or enabl[ing] discriminatory or bad-faith conduct by the hospital," *see* ECF No. 68 at 7, does not rise to the level of alleging bad faith on the part of LT.

Plaintiff's final basis for the breach of the implied covenant claim—that LT unjustly enforced a restrictive covenant in the contract—is the least well-developed in LT's motion to dismiss, but ultimately fares no better. Plaintiff alleges that, following her separation from Hartford Hospital, LT "informed Plaintiff that she was prohibited from working at any Hartford HealthCare facility unless she went through LT and complied with the terms of a restrictive covenant" in their agreement. ECF No. 15 ¶ 182(6). LT stated that if she worked to work directly with Hartford Healthcare or any of its hospitals, "she must be either placed there through LT, wait two years, or pay a $30,000 fee to LT." *Id.* The Services Agreement does, indeed, require that Plaintiff pay LT a recruitment fee of $32,000 if she accepted a position with "any facility, organization or group owned or operated by or affiliated" with a client within "two years from the last day" Plaintiff provided services to the client; if she accepted a position within a 15 mile radius of the assigned facility within two years of working there; or if she engaged in *locum tenens*[4]

[4] "A locum tenens physician is one who temporarily fulfills the obligations of another physician." *Rockwell v. Medicus Healthcare Sols., LLC*, No. 24-CV-128 (LJV), 2025 WL 959745, at *1 n.2 (W.D.N.Y. Mar. 31, 2025) (quoting *McGary v. Williamsport Reg. Med. Ctr.*, 775 F. App'x 723, 729 n.8 (3d Cir. 2019)).

coverage for the client (except through LT) within two years of the last day she provided services to the client. ECF No. 58-1 at 2.[5]

But Plaintiff does not plausibly state a claim for breach of the implied covenant of good faith and fair dealing on account of these provisions of the Services Agreement because she makes no allegation that LT ever sought to enforce them, much less to enforce them in bad faith. Although Plaintiff alleges that LT informed her of these provisions after she separated from Hartford Hospital, she does not allege LT took any steps to enforce them. *See* ECF No. 15 ¶ 182(6).[6] It would indeed be unfortunate if Plaintiff did not apply for jobs at Hartford Healthcare out of the belief that she would be required to pay the recruitment fee if she accepted a position, when the provisions may not have been enforceable. But Plaintiff points to no cases suggesting that the mere existence of such a provision—especially when not enforced against her—is enough to indicate LT's bad faith, as opposed to a possible honest mistake as to its rights. *See De La Concha*, 269 Conn. at 433.

In sum, while Plaintiff may not have felt that LT was particularly helpful in navigating her dispute with Hartford Hospital, nothing indicates that LT was unfaithful to the contract, or that

---

[5] It is not clear that these provisions are enforceable under Connecticut law, which places restrictions on covenants not to compete that pertain to physicians. Under *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 767 (2006), these provisions may be considered covenants not to compete, as they prohibit competition and are enforced by subjecting the employee to an economic loss, designed to deter competition. And Conn. Gen. Stat. § 20-14p limits the enforceability of covenants not to compete involving physicians. It specifies that such agreements are only enforceable if they restrict a physician's competitive activities for no more than year. Conn. Gen. Stat. § 20-14p(b)(2). Further, the law requires that each such covenant entered must be separately and individually signed by the physician. *Id.* § 20-14p(b)(4). The Court notes that the Services Agreement is governed by Georgia law, ECF No. 58-1 at 4, and thus it is not clear if Connecticut's statute would apply. In any event, the Court need not decide these issues, which were not briefed by the parties.

[6] While the Court does not consider it as part this ruling, Plaintiff's opposition to the motion to dismiss mentions an email exchange where LT actually *waived* the noncompete agreement provisions of her contract, first to allow her to work within 15 miles of her former employer and later to work for Hartford Healthcare at other hospitals. *See* ECF No. 68 at 5, 13, 15. Plaintiff states that this supports a "plausible inference that initial enforcement was a bad faith barrier to employment, rather than neutral contractual enforcement." ECF No. 68 at 5. But nothing in these events indicates any "initial enforcement" of the provision, nor bad faith. Rather, the demonstrate the reverse: LT was willing to forego enforcing parts of the contract for no apparent benefit, at Plaintiff's request.

Plaintiff did not receive benefits of the agreement that she reasonably expected to receive because LT acted in bad faith. *See LPP Mortg. Ltd. v. Underwood Towers Ltd. P'ship*, 205 Conn. App. 763, 829 (2021) ("[W]hen one party performs the contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, there is a breach of the covenant of good faith and fair dealing, and hence, a breach of contract, for which damages may be recovered."). Accordingly, Count Six is dismissed against both Jackson and LT, and both of these Defendants are dismissed from this suit.[7]

## III. MOTION TO STRIKE

Next, the Court denies Plaintiff's motion to strike various affirmative defenses advanced by the Hartford Defendants.

### A. Legal Standard

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may act on its own motion or on a motion made by a party "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."

Motions to strike are generally disfavored and "rarely granted." *See Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (collecting cases); *Broadrick v. Gilroy*, 786 F. Supp. 3d 487, 491 (D. Conn. 2025) ("Resolution of a Rule 12(f) motion is within the discretion of the district court, and such motions are generally disfavored and should be infrequently granted."), A party moving to strike "bears a heavy burden and must show that (1) no evidence in support of

[7] Plaintiff has not requested leave to amend. Although courts generally offer *pro se* parties leave to amend at least once, they need not do so if the deficiencies are substantive and better pleading would not cure them. *See Cuoco v. Moritsugu*, 222 F.2d 99, 112 (2d Cir. 2000). That is the case here, and thus the Court declines to grant leave to amend the claim for breach of the implied covenant of good faith and fair dealing against either LT or Jackson.

the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting allegations to stand would result in prejudice to the movant." MC1 Healthcare, Inc. v. United Health Grp., Inc., No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *11 (D. Conn. May 7, 2019) (internal punctuation omitted) (quoting *Walczak v. Pratt & Whitney*, No. 3:18-CV-0563 (VAB), 2019 WL 145526, at *2 (D. Conn. Jan. 9, 2019)), *reconsideration granted in part*, 2019 WL 3202965 (D. Conn. July 16, 2019).

Specifically, "[a]n affirmative defense may be stricken if (a) it does not meet 'the plausibility standard of *Twombly*'; (b) 'it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims;' or (c) it prejudices the [plaintiff] and it is 'presented beyond the normal time limits of the Rules.'" *Haber v. Bankers Standard Ins. Co.*, No. 3:19-CV-276 (VLB), 2019 WL 7343397, at *1 (D. Conn. Dec. 31, 2019) (quoting *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98–99 (2d Cir. 2019)). When evaluating the plausibility of an affirmative defense under *Iqbal*, courts must be mindful that the pleader of an affirmative defense has only twenty-one days and limited information to allege the defense, while the plaintiff has the "entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard." *GEOMC Co.*, 918 F.3d at 98. Thus, "courts 'apply a lower plausibility threshold' to affirmative defenses 'because the pleader has less time to gather facts and craft a response.'" *Rich v. Miller*, 634 F. Supp. 3d 66, 72 (S.D.N.Y. 2022) (quoting *Sec. & Exch. Comm'n v. Ripple Labs*, Inc., 2022 WL 748150, at *4 (S.D.N.Y. Mar. 11, 2022)).

Finally, even "boilerplate affirmative defenses" can be acceptable. *See Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 133 n. 6 (E.D.N.Y. 2015) (listing several "essentially boilerplate" defenses). Such defenses give plaintiffs fair notice and are not so legally insufficient that they should be stricken. *Kelly v. 21 Grp. Inc.*, No. 22-CV-0226 (MKB), 2023 WL 5831131,

at *6 (E.D.N.Y. Sept. 8, 2023); *Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 489–90 (S.D.N.Y. 2008) ("There is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time.").

B. Discussion

The Court denies Plaintiff's motion to strike.

First, Plaintiff's motion was untimely. Rule 12(f) states that a motion to strike can "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." The Hartford Defendants' answers to the amended complaint with affirmative and other defenses were filed on October 14, 2025. *See* Hartford Hospital Ans., ECF No. 62; Harford Healthcare Corp. Ans., ECF No. 63. Plaintiff filed the motion to strike on November 18, 2025, thirty-five days after these answers were filed, making the motion two weeks late. The Court must offer some solicitude to Plaintiff because she was proceeding *pro se* at the relevant time, even with respect to procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("while a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant."). But the fact that Plaintiff did not seek the Court's leave to file this motion late, nor provided any reason why it should be accepted late, weighs against her. Nonetheless, the Court proceeds with addressing the merits of the motion.

Plaintiff seeks to strike the following defenses[8] from the Hartford Defendants' answers: failure to state a cause of action upon which relief can be granted (Aff. Defense #1); Defendants' actions were undertaken in good faith and for legitimate business reasons and did not violate any

[8] The parties' dispute over whether all of these defenses are *affirmative* defenses is immaterial to resolution of the motion to strike, so the Court need not address it here.

law (Aff. Defense #2); Plaintiff did not suffer any damages legally attributable to Defendants (Aff. Defense #3); Plaintiff fails to state a claim upon which compensatory, punitive, attorney's fees, costs, and/or any other damages may be awarded (Aff. Defense #4); Plaintiff failed to mitigate her damages (Aff. Defense #5); Plaintiff is not entitled to employee-related protections or remedies as an independent contractor (Aff. Defense #9); Defendants made no false statements, representations, or promises regarding Plaintiff's status, continued engagement, or accommodations (Aff. Defense #10); and Plaintiff did not reasonably or detrimentally rely on any act or statement by Defendants (Aff. Defense #11).[9]

### 1. *First, Third, and Fourth Defenses: Failure to State a Claim Resulting in Cognizable Damages*

First, the Court denies the motion to strike with respect to the Hartford Defendants' first, third, and fourth defenses, which relate to failure to state a claim resulting in damages. Plaintiff contends the first and third defenses are not proper affirmative defenses, but rather challenges to sufficiency of the complaint more appropriately pursued under Rule 12(b)(6). ECF No. 75 at 2, 4–5. But "[i]t is well settled . . . that a failure-to-state-a-claim defense can properly be asserted as an affirmative defense in an answer. And a failure-to-state-a-claim defense is not vulnerable to motions to strike because the defense is analogous to a general denial and its inclusion, although likely redundant, does not prejudice plaintiffs." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 432 (S.D.N.Y. 2010) (citations omitted); *see also Aros v. United Rentals, Inc.*, No. 3:10-CV-73 (JCH), 2011 WL 5238829, at *4 (D. Conn. Oct. 31, 2011)) ("It is well settled, however, that a party may include failure to state a claim as an affirmative defense in its answer, and that such a defense is 'invulnerable as against the [12(f) ] motion.'") (citation omitted). While these defenses

[9] Hartford Hospital and Hartford Healthcare's defenses are identical, with the minor exception that Hartford Healthcare inaccurately lists its twelfth defense as the "Thelfth Defense." ECF No. 63 at 22.

may be repetitive, they are plausible, not legally insufficient, and Plaintiff has articulated no prejudice resulting from their inclusion. Accordingly, they will not be stricken.

*2. Second Defense: Independent Contractor Defense*

Nor will the second defense be stricken. This defense alleges that "[a]ll actions taken by Defendant with respect to Plaintiff's status as an independent contractor at Hartford Hospital were undertaken in good faith and for legitimate business reasons and did not violate any right(s) that may be secured to Plaintiff under any federal, state or local laws, rules, regulations, guidelines or common law." ECF No. 62 at 21; ECF No. 63 at 21. Plaintiff contends this "fails to meet the requirements of an affirmative defense under Federal Rules of Civil Procedure Rule 8[(c)] because it merely restates a legal conclusion without introducing any new facts or legal theories that could negate or limit Plaintiff's claims." ECF No. 75 at 3–4. As the Hartford Defendants observe, however, this defense aligns with the Supreme Court's holding in *Kolstad v. American Dental Association*, where the Court declared "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999). As the Hartford Defendants are entitled to advance a good faith defense, it is adequately pleaded, and Plaintiff points to no prejudice resulting from its inclusion, the Court declines to strike this defense.

*3. Fifth Defense: Failure to Mitigate*

Likewise, the defense that Plaintiff failed to mitigate her damages is viable. Plaintiff contends the defense is speculative, contingent upon future events. ECF No. 75 at 6. But "[f]ailure to mitigate is an affirmative defense in Connecticut." *Currie v. Metro-North R.R.*, No. 3:06-CV-01575 (EBB), 2010 WL 4392933, at *3 (D. Conn. Oct. 29, 2010). Plaintiff has not explained why

the defense is implausible, legally insufficient, or why she suffers prejudice from its assertion. The Court therefore declines to strike this defense.

*4. Ninth Defense: Independent Contractor*

Although the Hartford Defendants decline in their opposition papers to justify inclusion of their ninth defense—that Plaintiff was an independent contractor and not an employee—it, too, need not be stricken. ECF No. 62 at 22; ECF No. 63 at 22. Plaintiff contends this is "merely a denial of the allegations regarding Plaintiff's employee status" and states that the Hartford Defendants have not "fully addressed" various factual allegations in the amended complaint about her employee status, "thus undermining the plausibility of their affirmative defense." ECF No. 75 at 8–9. But Defendants need not fully address all factual allegations in order to assert a defense. Further, if Plaintiff was an independent contractor, it is possible some of her legal claims would fail. For instance, an independent contractor cannot allege a Title VII claim for discrimination against a purported employer because she is not the employer's employee. *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008), *as amended* (Apr. 22, 2008) ("Once a plaintiff is found to be an independent contractor and not an employee . . . the Title VII claim must fail."). The Hartford Defendants sufficiently allege that Plaintiff operated as an independent contractor, observing "she was expected to fulfill the responsibilities inherent to that role, her work was performed independently and without the level of supervision or control characteristic of an employment relationship." ECF No. 62 ¶ 17; ECF No. 63 ¶ 17. Given that the defense is plausible, legally relevant, and that Plaintiff describes no prejudice arising from its assertion, the Court declines to strike this defense.

*5. Defendant's Tenth Defense: No False Statements*

The Court likewise declines to strike the Hartford Defendants' tenth defense, that they "made no false statements, representations, or promises regarding Plaintiff's status, continued

engagement, or accommodations." ECF No. 62 at 22; ECF No. 63 at 22. Plaintiff contends this is also a general denial of the Plaintiff's claims, and "legally insufficient, redundant, and immaterial under Rule 12(f)(1)." ECF No. 75 at 7. But Plaintiff repeatedly asserts that Hartford Defendants' employees made false statements. ECF No. 15 ¶¶ 78, 128, 190. She also accuses these Defendants of fraudulent misrepresentation in Count Seven, claiming they "misrepresented the nature of Plaintiff's communication by internally or administratively treating her as having voluntarily resigned." *Id.* ¶ 188. The first element of a fraudulent misrepresentation claim is "a false representation of fact." *White v. Allstate Ins. Co.*, No. 3:98-CV-1586 (PCD), 2000 WL 303435, at *1 (D. Conn. Feb. 1, 2000). The Hartford Defendants are entitled to present a defense that this element is not met. Thus, the Court declines to strike this claim.

*6. Defendant's Eleventh Defense: Absence of Reliance*

Finally, the Court declines to strike the eleventh defense, that "Plaintiff did not reasonably or detrimentally rely on any act or statement by Defendants." ECF No. 62 at 22; ECF No. 63 at 22. Plaintiff calls this a "mere denial" and asserts it merely clutters the pleadings. ECF No. 75 at 8. But the third and fourth elements of fraudulent misrepresentation are that the false representation had to be "made to induce the recipient to act in reliance thereon to his detriment; and actual detrimental reliance." *White*, 2000 WL 303435, at *1. This is not a general denial; the Hartford Defendants are refuting the specific elements of what Plaintiff's claim. The Court declines to strike this claim.

In sum, the Court denies Plaintiff's motion to strike in full.

## IV. CONCLUSION

For the reasons described herein, the motion to dismiss Count Six filed by Defendants LT Medical, LLC, and Jackson Healthcare, LLC, ECF No. 57, is GRANTED. The Clerk is directed to terminate Defendants LT Medical, LLC, and Jackson Healthcare, LLC, from the case. Plaintiff's motion to strike, ECF No. 75, is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 24th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE